Case number 21-5035. Lori Panarello Appellant versus Debra A. Haaland, Secretary, United States Department of the Interior. Ms. Bertrand for the Appellant, Mr. DiGennaro for the Appellant. Good morning, Ms. Bertrand. Good morning. Please proceed. Good morning. My name is Joy Bertrand and I represent the Plaintiff Appellant Lori Panarello. This case presents an opportunity for this circuit to join the 11th and 7th circuits in finding that the resolution of adverse employment actions contingent on withdrawal of protected Title VII actions is evidence of retaliation. Knox v. Roper cited in the Appellant's reply brief at 17 talks about a similar circumstance to what happened with Ms. Panarello. Well, let me interrupt you because this is the only issue that I see in this case and I have combed the record and I see nowhere where a decision-maker, not Peyton Williams who was not a decision-maker, but where a decision-maker, that would be Feer or his agent who was delivering the termination notice, ever mentioned the last chance agreement. It was Peyton Williams who said to Feer, will you consider it? He said yes. He obviously didn't consider it because Libby delivered this termination notice. Your client asked if it could go to the end of the pay period. He called Peyton Williams and she told your client, well, you were supposed to be offered the last chance agreement and she said, I'm not interested in that or whatever she said. The offer was never made as far as I can see from this record by a decision-maker. Peyton Williams was discussing it, but where did a decision-maker ever relay that to your client? And even your client in her depositions doesn't say that. Your Honor, Peyton Williams works at the behest of the decision-maker. She worked directly with the decision-maker. She's human resources. She has no authority as far as I can tell, and she even said she didn't, to make the decision. And that's clear from her actions. She said to Feer, will you consider this? Your Honor, I believe the government agrees that this was extended to Ms. Panarello. And I think the district court agrees, and I think they're all wrong on this record. But it's not, the thing is at this point, we have this discussion of it and at the summary judgment stage, that is, if your Honor believes that that is something that hasn't been entirely established and that that is an issue of fact for a jury, especially when the government hasn't contested that it occurred and that Ms. Panarello was given that last chance offer and rejected it because it was based only on the withdrawal of the pending lawsuit. All right. Well, let's talk about what the district court said. The district court said it came too late. The decision had already been made. That is clear from the record. The termination notice was delivered by Libby. Your client asked for more time. Libby calls Peyton Williams. She says, you were supposed to be offered this. And she says, I'm not interested. And that makes it too late, even if we assume it was offered at that point. Your Honor, I respectfully think that it wasn't too late. And this is what happened in Roper, or Knox v. Roper, where the decision was made. And then the employer came back and said, well, we've decided to fire you. However, if you don't want to be fired, withdraw your pending protected EEO matter. And here, the same thing happened that, yes, the firing decision had been made. And this is, for example, here's an... But the offer was made by someone who had no authority to make the offer. If that's what Peyton Williams said was an offer, she has no authority to make that. Your Honor, I don't think there's been any factual finding in the lower court confirming that Ms. Peyton Williams did not have the ability. Well, she, in her deposition or affidavit, she says she doesn't. But let me... You go on with your argument, because I'm taking up a lot of your time. Sure. Thank you. There's an analogy to this that I would ask the court to consider, and that would be this. If you had an employee who had a pending Title VII matter, whether it was like an EEO complaint or an actual lawsuit, as we had here, and that employee comes in late to work several times. And the employer says to her, we're going to fire you because you've been consistently late to work. We've decided to fire you. And then the supervisor or whomever, HR, and there's been no indication in this record that Peyton Williams doesn't have the ability to communicate decisions from higher-ups. And the government has agreed that this was extended to Ms. Panarello. If the employer comes back and says, well, we did decide to fire you. However, if you have sex with me, your boss will drop the lawsuit, or will drop the firing. It would be the same type of quid pro quo as we have here. We've decided to fire you. We're holding your job hostage, but drop your lawsuit. And what's really... It's not the same though, counsel. I don't think that that analogy works. I mean, global settlements, I mean, I don't know what the latest data is, but it's something very well north of 90% of civil cases get resolved by settlements. And global settlements are the preferred way to do it. I mean, it's malpractice for a lawyer to settle one case. And if the same party has a different case pending against their client to try to figure out how to make them both go away. And so I don't think that this is... You're comparing apples and oranges here. And so to me, I don't think that that analogy works. And the way that your retaliation theory has to work really has to be that they didn't really have any intentions on really firing her at all when they proposed it. Instead, they proposed it so that they could get her to settle a separate lawsuit that she had brought by proposing this kind of thing without really meaning to follow through on it to see if she would be pressured into agreeing to a last chance agreement. I mean, that's the way your theory has to work, right? Well, your honor, I agree with the court that global settlements are always preferred. And one thing that I think is important that the court just noted here is that lawyers do have an obligation to try to resolve as many issues as possible, but here the lawyers were never presented with this and they didn't have an opportunity to negotiate. And what Knox versus Roper says in the 11th circuit is, no, you can't create this kind of contingency, especially on a issue. And here, in addition to that, we don't have anything in the record about there being any other contingencies regarding this last chance agreement. Ordinarily, as the court is well aware, and as we see frequently with last chance agreements, there's a performance plan put in place. There's things the employer has to do, but things the employee has to do to improve their performance. There was never an issue with Ms. Panarello's performance. And in fact, she stayed working throughout this. She had access to confidential information. She was receiving briefings. She was mentoring subordinates. So there was no performance to be improved upon. The only contingency discussed in this last chance agreement idea that was related to Ms. Panarello was that she dropped her pending lawsuit against the agency. And that's what Knox versus Roper. And to a related extent, the Coggins decision out of the 7th circuit says you cannot do. There is an issue of fact here about whether or not, but for the employee rejecting the term that they drop their Title VII action, they would have been fired. I'm sensitive to time, Your Honor, and I'm at 20 seconds. So I want to make sure that the court doesn't have any other questions for me before Mr. DiGennaro. All right. Judge Rogers, do you have any questions? No. Okay. Well, we'll give you a couple of minutes and reply then. Thank you. Mr. DiGennaro. Good morning, Your Honors. Assistant United States Attorney Stephen DiGennaro on behalf of I would like to begin briefly on this question about the last chance agreement that this court earlier asked about and highlight an additional reason to reject Ms. Panarello's last chance agreement argument beyond that which Judge Henderson had identified. And that is these preliminary global settlement discussions between a human resource official acting at the behest of of a global settlement is not at all dissimilar from global settlement discussions generally, but for the circumstances that in which it came out. And our position would be that this puts the case more in line with the line of authority mentioned in the case that was cited in the Secretary's brief, Snowden v. Zinke, a decision by then Judge Kitagi Brown-Jackson that discussed how courts within the circuit and elsewhere have upheld knowing involuntary waivers of then existing Title VII claims as part of a last chance agreement. There's also evidence in the record that the Park Police had not only offered last chance agreements previously to other employees to waive the then existing Title VII claims, but that... ...made an offer by someone in a position to make her that offer. Your Honor, I believe that there was testimony during Ms. Payton's deposition that she had asked Deputy Chief Feer to consider the last chance agreement. He said he would. And the next thing we know, she gets a letter of termination. He obviously decided to consider it and reject it from the record. Yes, I believe that is generally the sequence. It was after the decision on removal had been tendered. Ms. Payton then asked Deputy Chief Feer whether he would consider the last chance agreement. But the government's argument is even... Oh, you mean Payton? Well, Payton and Williams. Okay. Now, I get the feeling that... No, you're right. Because she said she had that... Well, she said she had the discussion with Panarello on September 9th. And that had been when Libby calls her to say, can she extend the termination to the end of the pay period? And Payton Williams says, well, she was supposed to be given this offer. That's her testimony as to when she tells Payton Williams about it. Yes, that is my recollection as well, Your Honor. Okay, so I'm still back at who made her the offer? Payton Williams couldn't do it. Your Honor, the government would characterize the conversations between Ms. Payton Williams and Ms. Panarello as preliminary ones to consider whether there was some appetite on the part of Ms. Panarello to explore that conversation. I think that is such a stretch. I mean, think about this. If Libby had done what Payton Williams thought he was supposed to do, that is deliver the message that if you'll drop the suit, we'll reconsider the termination. He doesn't do that. Payton Williams says to Panarello, well, you were supposed to be given this offer. That's not an offer because she has no authority to do it. And Panarello says, I'm not interested in that. That's all the record shows about the offer. Yes, Your Honor. And in addition to that, which you've identified in the record, that factual circumstance is slightly different from the circumstances presented in the Knox decision, which the record that was developed there was that the employee and the employer had come to an agreement about a way to handle a proposed disciplinary path for that employee after they reached that agreement, which at the time did not include a waiver of Title VII claims. That employee then makes a charge about disparate treatment in the manner in which the employee or the employer rather was meting out certain discipline to its employees on the basis of race. After that charge is made, then the employer adds to the last chance agreement, the waiver of the Title VII claims. So even if we accept it for purposes of the argument that the Park Police had tendered an offer by somebody with authority to bind the Park Police in the circumstance, the sequence of that is dissimilar from the manner in which the waiver was added in Knox. What about the argument made by your friend on the other side that the last chance agreement was anomalous because it didn't have other characteristics that last chance agreements normally have? It only had the waiver. Your Honor, the government's argument is that because the conversations of exploring the prospect of this global settlement were only very preliminary, there is no evidentiary records to suggest what else would have been included in that last chance agreement. So the record has not been developed because of the fact that Ms. Panarella did not otherwise seek to explore the prospect once she heard that she would have to drop her existing Title VII claims, the conversations ended there. So the record is not developed as to what the contents are. But given that, as the non-movement, Ms. Panarella has to show there's a triable fact as to pretext any gaps in the evidence there wouldn't support denial of the summary judgment motion, particularly when there's testimony in the case suggesting that the inclusion of last chance agreements, within last chance agreements, waivers of then existing claims is not anomalous in the circumstance, nor something that was desperately offered to Ms. Panarella either because of her sex or prior protected activity. But aren't your previous comments supportive of Judge Henderson's point that you don't, she doesn't have any burden absent proof that the offer was extended by someone who had authority to extend it. I mean, she doesn't have any burden. I thought that, I'm saying things Judge Henderson hasn't said, but isn't that where some of her questions lead you? You're acting as though the plaintiff hasn't met her burden of proof yet. She didn't have any burden of proof, it's the offer was never extended. That's all. Your Honor, I'm not quite sure I followed the question as to which step of the analysis, Ms. Panarella. If you can't understand, I won't repeat it. I won't take up your time. Why don't you continue your argument? As previously mentioned, on this factual record, we believe that the evidence developed is dissimilar from the cases that Ms. Panarella relies on. I've already discussed the distinctions between this case and Knox, but just to briefly discuss the Cognos Corp case. In that case, the court found as potentially retaliatory the fact that the employer had written the waiver in such a manner that it would have required the employee to waive future Title VII claims that had not yet materialized, and that court had included language about the fact that employers may not buy a license to discriminate through a prospective waiver. Here, the only testimony developed, assuming an offer in the last transaction agreement had been made, was that it would require Ms. Panarella to drop then existing Title VII claims. That's a reason for finding Cognos Corp distinct from this case. The Board of Governors' decision involved a case where the employees would have been forced to choose between waiving statutory rights to file a charge with the EEO, as distinct from bringing a Title VII claim, or forego a collectively bargained for contractual right to a grievance procedure. Again, no evidence has been induced that such a circumstance exists here. And unless there are any other further questions from the panel, we would respectfully request that the decision below be affirmed. All right. Thank you. Madam Clerk, why don't you give Ms. Bertram two minutes? Thank you. One thing the court just mentioned that I think is really important here is where the burdens are. And this case was a summary judgment determination. This wasn't a trial. This was a summary judgment determination. And on DeNoble, all we're looking for are there an off-duty DUI in which she was cooperative, presented no problem, certainly honest, constituted retaliation. And the strongest evidence of that is that she was fired, she was offered a last chance agreement by an agent of the agency, that would be Ms. Peyton Williams, and then was fired when she rejected that. We have other evidence of retaliation that goes to all of this that's being proffered by the government being pretext for what was really going on here. And we have the evidence of sworn statements of people involved in the investigation saying the firing of Ms. Panarello was consistent with this agency's pattern and practice of using the disciplinary process to punish people who come forward in EEO matters. That is per se retaliation. And here, the issue is only are there issues of fact in this record, particularly just looking at the little piece of the record here that we're talking about regarding who had authority and what was extended to Ms. Panarello and what did she reject versus accept are issues of fact. This case must be returned to the district court because these are issues of fact that remain in the province of the jury. Does the court have any further questions for me at this time before in the last 10 seconds here? It doesn't look like it. So thank you for your argument. And Madam Clerk, if you would call the next case.
judges: Henderson, Wilkins, Rogers